**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3309
_____

MENTE CHEVROLET OLDSMOBILE, INC.,
f/k/a Mente Chevrolet, Inc. trading as Mente Chevrolet;
MENTE CHRYSLER DODGE, INC.; DONALD M. MENTE

v.

GMAC

GMAC INC., now known as ALLY FINANCIAL INC.,
                                                        Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 5-08-cv-02403
District Judge: The Honorable Juan R. Sanchez
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
November 10, 2011

Before: SCIRICA, SMITH, and JORDAN, *Circuit Judges*

(Filed: November 15, 2011)

_____

OPINION

_____

SMITH, *Circuit Judge.*

GMAC, Inc. appeals from an order entered by the United States District Court for the Eastern District of Pennsylvania denying GMAC's renewed motion for judgment as a matter of law, after a jury found for Plaintiffs Mente Chevrolet Oldsmobile, Inc., Mente Chrysler Dodge, Inc., and Donald M. Mente (collectively, "Mente") on their breach of contract claim and awarded Mente $4 million in compensatory damages. For the reasons that follow, we will affirm.[1]

GMAC and Mente entered into a contract (the "Financing Agreement") financing two of Mente's car dealerships. Under the terms of the Financing Agreement, Mente was responsible for making payments to GMAC "faithfully and promptly" upon the sale of a car. The Financing Agreement did not define the phrase "faithfully and promptly."

On July 19, 2007, GMAC conducted a surprise audit on Mente's dealerships. GMAC asserted that Mente had not made payments on 14 recently sold vehicles, and declared that Mente was "out of trust." Mente informed GMAC that the delay was attributable to the fact that Dawn Johnson, the dealerships' controller, was on vacation. Johnson, who had previously told GMAC that she would be on vacation, was the only person who could issue checks on behalf of the

2

dealerships. Mente requested that GMAC allow Johnson to return from her vacation to make the required payments, as it regularly had in the past when Johnson was on vacation. GMAC refused, and demanded immediate payment.

Because Johnson was not available to make the required payment, GMAC terminated Mente's credit lines, notified General Motors and Chrysler that the credit lines were terminated (preventing Mente from purchasing new vehicles), seized possession of Mente's assets, and placed armed guards at the dealerships. Mente feared that any unpaid debts might lead to arrest and jail time, and asked GMAC to release the funds needed to pay off their debts. GMAC agreed on the condition that Mente sign an agreement (the "Forbearance Agreement") admitting to defaulting under the Financing Agreement and releasing Mente's right to sue GMAC for previous wrongdoings. Mente signed the Forbearance Agreement.

Mente subsequently brought suit in the United States District Court for the Eastern District of Pennsylvania, claiming, *inter alia*, that GMAC breached the Financing Agreement by declaring Mente out of trust for failing to make payments "faithfully and promptly." The case proceeded to a jury trial.

At trial, GMAC argued that: (1) by signing the Forbearance Agreement, Mente waived their right to claim a breach of the Financing Agreement; and (2)

---

[1] The District Court had jurisdiction over this case, which included claims under federal law, under 28 U.S.C. §§ 1331, 1367. We have final order jurisdiction

3

under the Financing Agreement, GMAC had the right to demand payment immediately upon sale of a car. Mente argued, among other things, that: (1) the Forbearance Agreement was not enforceable due to GMAC's unclean hands; and (2) the parties' course of dealings showed that Mente was not obligated to make its payments immediately upon sale of a car. Mente also provided evidence of damages allegedly caused by GMAC's breach, showing that Mente: (1) suffered $707,000 in lost profits from sales; (2) lost $1.15 million in the "blue sky" value of Mente Chevrolet, Oldsmobile, Inc.; and (3) lost $3.259 million in dealer termination assistance.

The jury found that GMAC had breached the Financing Agreement. The jury also found that the Forbearance Agreement was unenforceable as the result of GMAC's unclean hands. The jury awarded Mente $4 million in compensatory damages for GMAC's breach.

After the jury delivered its verdict, GMAC renewed its motion for judgment as a matter of law on the breach of contract claim. GMAC argued, in relevant part, that: (1) the Financing Agreement was unambiguous and GMAC was entitled to declare Mente out of trust; (2) the Forbearance Agreement was valid and barred Mente's breach of contract claim, despite the jury's finding of a breach; and (3) the jury's damages award was too speculative. The District Court denied GMAC's

under 28 U.S.C. § 1291.

motion, and GMAC now appeals. We exercise plenary review, and apply the same standard as the District Court. *Curley v. Klem*, 499 F.3d 199, 205-06 (3d Cir. 2007). We view "the evidence in the light most favorable to . . . the verdict winner, and drawing all reasonable inferences in his favor." *See Pitts v. Delaware*, 646 F.3d 151, 155 (3d Cir. 2011).

The District Court was correct that the Financing Agreement was ambiguous because the contract did not define "faithfully and promptly" and the phrase is capable of being reasonably understood in more than one way. *See Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 483 (Pa. 2009).[2] As a result, the issue whether the Financing Agreement had been breached was properly submitted to the jury.[3] *Id.* Mente's evidence supported the jury's interpretation of the Financing Agreement, and thus supported the jury's finding of a breach.

Second, the District Court correctly concluded that the Forbearance Agreement was not enforceable because the jury found that GMAC had unclean hands. GMAC argues on appeal that the unclean hands doctrine does not apply here because Mente's claim is contractual and not equitable. Here, however, the

---

[2] The parties agree that Mente's breach of contract claim is governed by Pennsylvania law.

[3] GMAC argues that it was entitled to demand immediate payment as a virtue of another clause in the Financing Agreement. The interaction between that clause and the "faithfully and promptly" clause, however, is a question of fact that was

doctrine is being invoked to defend against *GMAC's* request to enforce the waiver of Mente's breach of contract claim in the Forbearance Agreement. Under Pennsylvania law, a request to enforce a contractual waiver is a request for specific performance of the contract containing the waiver. *See Griest v. Penn. State Univ. & Dickinson School of Law*, 897 A.2d 1186, 1186 (Pa. Super. Ct. 2006) (considering a request for specific performance of a release of a claim under the Pennsylvania Human Relations Act); *Gateway Center Corp. v. Merriam*, 434 A.2d 823, 825 (Pa. Super. Ct. 1981) (considering a request for specific performance of a release of various legal claims). Specific performance is an equitable remedy, *see Gateway*, 434 A.2d at 825, and so can be barred by the doctrine of unclean hands. *In re E.F.*, 995 A.2d 326, 332 (Pa. 2010) (holding that a party "has no right to invoke equity [where] he comes before the court with unclean hands").[4] The jury also found that at least one breach of contract claim accrued after the Forbearance Agreement was signed, and thus the agreement did not waive all of Mente's claims.

---

properly submitted to the jury. *Marshall v. Port Auth.*, 568 A.2d 931, 943 (Pa. 1990).

[4] GMAC also argues that the doctrine of unclean hands can only be invoked by a party seeking to defeat a claim for *affirmative* equitable relief. Pennsylvania courts, however, have held that *any* "party seeking equitable relief . . . must come before the court with clean hands." *Mudd v. Nosker Lumber, Inc.*, 662 A.2d 660, 663 (Pa. Super. Ct. 1995), *cited approvingly in Jacobs v. Halloran*, 710 A.2d 1098, 1103 (Pa. 1998).

Finally, the District Court correctly found that the $4 million consequential damage award was not too speculative. The jury was provided expert testimony estimating various forms of damage. With this evidence, the jury's verdict was not impermissibly speculative under Pennsylvania law. *See Kituski v. Corbman*, 714 A.2d 1027, 1030 (Pa. 1998).[5]

We will affirm the District Court's order.

---

[5] GMAC also argues that Donald Mente lacks standing to seek damages for the lost property value suffered by the dealerships, which were owned by partnership entities and not by Donald Mente himself. As the District Court noted, however, the evidence relating to losses in property value was provided to help estimate Mente's lost dealer termination assistance, which would have been based in part on the rental value of the dealership. Moreover, there is no reason to conclude that the jury awarded Donald Mente damages based on any loss in property value when its $4 million award was well within the amount calculated by the experts without including lost property value.