# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| GMAC, a Delaware corporation, | ) ) | No. 68374-8-I |
| Petitioner, | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| EVERETT CHEVROLET, INC., a Delaware corporation; and JOHN REGGANS and JANE DOE REGGANS, and their marital community, | ) ) ) ) ) | PUBLISHED<br><br>FILED: January 27, 2014 |
| Respondents. | ) ) | |
| ALLY FINANCIAL, INC., a Delaware corporation, | ) ) ) | |
| Petitioner, | ) ) | |
| JOHN REGGANS, an individual; and the marital community of JOHN REGGANS and CARMENLYDIA REGGANS, husband and wife, | ) ) ) ) ) | |
| Respondents. | ) ) | |

Cox, J. — This is the second time that this case is before this court on discretionary review. Previously, we reversed and remanded for further proceedings.[1] We now reverse and remand with directions, this time to a different judge.

---

[1] GMAC v. Everett Chevrolet, Inc., noted at 158 Wn. App. 1004, 2010 WL 4010113 (2010), review denied, 171 Wn.2d 1007 (2011).

Everett Chevrolet ("EC") was a car dealership in Everett, Washington. John Reggans is its sole shareholder. GMAC provided financing for EC to purchase new and used vehicles. In exchange, EC granted GMAC a security interest in EC's equipment, inventory, and proceeds.

A core document governing the financing arrangement is the Wholesale Security Agreement ("WSA"), which is dated December 10, 1996. It contains provisions that we more fully describe later in this opinion.

The parties signed several amendments to the WSA. None appear to have changed the relevant provisions of this agreement.

EC also had a revolving line of credit with GMAC. This is documented in the Revolving Line of Credit Agreement ("RLCA"), which is dated October 16, 2000. We also discuss provisions of this agreement later in this opinion.

Reggans testified that in 2006, the auto market started declining. He testified that EC earned approximately $700,000 in 2006 but earned only $28,000 in 2007. In late 2007, Reggans sought a $300,000 increase in the credit limit. GMAC agreed and increased the credit line to $800,000.

During 2008, the situation deteriorated. EC was unable to improve its position.

By letter dated December 15, 2008, GMAC terminated EC's wholesale credit line and revolving line of credit and also made demand for full payment of both. The principal amounts then due were $5,530,666.13 on the wholesale credit line and $738,000.00 on the revolving line of credit.

This litigation followed. GMAC sought to enforce its rights as a secured creditor seeking replevin of its security. A three-week hearing on this request occurred in March and April 2009. The trial court denied GMAC's request for replevin.

GMAC sought discretionary review, which we granted. This court reversed the trial court's denial of replevin and remanded.[2] This court did not reach the merits of the underlying dispute between the parties.[3]

On remand, GMAC moved for summary judgment to dismiss EC's "bad faith" counterclaims. The trial court orally denied GMAC's motion. In the order that followed, the court incorporated its oral rulings, which articulated its reasons for denying the motion.

GMAC sought discretionary review for a second time. We granted review on the basis that the trial court's denial of summary judgment was probable error that limited the freedom of a party to act.[4]

## SUMMARY JUDGMENT

GMAC argues that the trial court erred by failing to grant GMAC's motion for summary judgment to dismiss EC's bad faith claims. GMAC identifies these as "EC's first through third counterclaims and EC's affirmative defense of

---

[2] Id.

[3] Id. at *5 n.1.

[4] GMAC v. Everett Chevrolet, Inc., No. 68374-8-I, 2012 WL 3939863 (Wash. Ct. App. Aug. 16, 2012).

Estoppel in Pais . . . and its untitled affirmative defense, contained in ¶ 2.6 of EC's Answer."[5] We agree.

"In a summary judgment motion, the moving party bears the initial burden of showing the absence of an issue of material fact."[6] If the moving party meets this burden, "the inquiry shifts to the party with the burden of proof at trial . . . ."[7] The nonmoving party must then set forth specific facts showing a genuine issue for trial.[8] Summary judgment is appropriate only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.[9]

On appeal, a denial of summary judgment is reviewed de novo, and an appellate court performs the same inquiry as the trial court.[10]

We deem abandoned any matters argued below that are not raised on appeal.[11]

### Demand Obligation

GMAC asserts that the duty of good faith does not limit GMAC's right to demand repayment at any time for any reason. In opposition, EC contends that

---

[5] Clerk's Papers at 506.

[6] Young v. Key Pharm., Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989).

[7] Id.

[8] LaPlante v. State, 85 Wn.2d 154, 158, 531 P.2d 299 (1975).

[9] CR 56(c).

[10] Macias v. Saberhagen Holdings, Inc., 175 Wn.2d 402, 407, 282 P.3d 1069 (2012).

[11] See Coggle v. Snow, 56 Wn. App. 499, 512, 784 P.2d 554 (1990).

GMAC's argument is based on the "false premise" that GMAC had a demand note. Accordingly, EC disputes that GMAC had the authority under the WSA to demand payment for all amounts advanced under this agreement. We conclude that the WSA contains a demand obligation and, because controlling law holds that a good faith obligation does not bar enforcing a demand obligation, we agree with GMAC.

Whether the WSA contains a demand obligation is the threshold and controlling issue in this case. If we decide that the only reasonable reading of the WSA is that it contains a demand obligation, then Allied Sheet Metal Fabricators Inc. v. Peoples National Bank[12] controls. Accordingly, GMAC's enforcement of the demand obligation would not be barred by a good faith obligation.

"The 'touchstone of contract interpretation is the parties' intent.'"[13] "Washington courts follow the objective manifestation theory of contracts, imputing an intention corresponding to the reasonable meaning of the words used."[14]

"An interpretation which gives effect to all of the words in a contract provision is favored over one which renders some of the language meaningless

---

[12] 10 Wn. App. 530, 518 P.2d 734, review denied, 83 Wn.2d 1013, and cert. denied, 419 U.S. 967, 95 S. Ct. 231, 42 L. Ed. 2d 183 (1974).

[13] Realm, Inc. v. City of Olympia, 168 Wn. App. 1, 4-5, 277 P.3d 679, (quoting Durand v. HIMC Corp., 151 Wn. App. 818, 829, 214 P.3d 189 (2009)), review denied, 175 Wn.2d 1015 (2012).

[14] Id. at 5.

or ineffective."[15] A court will not read ambiguity into a contract "'where it can reasonably be avoided.'"[16]

Whether a contract is ambiguous is a question of law.[17] A contract provision is not ambiguous merely because the parties to the contract suggest opposing meanings.[18] "If only one reasonable meaning can be ascribed to the agreement when viewed in context, that meaning necessarily reflects the parties' intent; if two or more meanings are reasonable, a question of fact is presented."[19] Summary judgment as to a contract interpretation is proper if the parties' written contract, viewed in light of the parties' other objective manifestations, has only one reasonable meaning.[20]

A demand note is payable immediately on the date of its execution.[21] This court in Allied set forth the general rule regarding such matured obligations:

> "An instrument is payable immediately if no time is fixed and no contingency specified upon which payment is to be made. A

---

[15] Seattle-First Nat. Bank v. Westlake Park Assocs., 42 Wn. App. 269, 274, 711 P.2d 361 (1985).

[16] Mayer v. Pierce County Med. Bureau, Inc., 80 Wn. App. 416, 421, 909 P.2d 1323 (1995) (quoting McGary v. Westlake Investors, 99 Wn.2d 280, 285, 661 P.2d 971 (1983)).

[17] Syrovy v. Alpine Res., Inc., 68 Wn. App. 35, 39, 841 P.2d 1279 (1992).

[18] Mayer, 80 Wn. App. at 421.

[19] Martinez v. Kitsap Pub. Servs., 94 Wn. App. 935, 943, 974 P.2d 1261 (1999).

[20] Go2Net, Inc. v. C I Host, Inc., 115 Wn. App. 73, 85, 60 P.3d 1245 (2003).

[21] Allied, 10 Wn. App. at 536.

demand note is payable immediately on the date of its execution—that is, it is due upon delivery thereof; and, unless a statute declares otherwise, or a contrary intention appears expressly or impliedly upon the face of the instrument, a right of action against the maker of a demand note arises immediately upon delivery and no express demand is required to mature the note or as a prerequisite to such right to action, commencement of a suit being sufficient demand for enforcement purposes."[22]

Here, the document that is the basis of EC's primary challenge is the WSA, not a promissory note like in Allied. But a demand obligation is not confined to promissory notes. Thus, there is no reason to conclude that the analysis of the legal issues is any different when a demand obligation is contained in an agreement other than a promissory note. EC fails to cite any authority to support such a difference.

In general, when an agreement includes demand language along with other contract terms, a court must carefully consider the agreement to determine if it contains a true demand obligation. We do so here.

In this case, the "upon demand" provision in the second paragraph of the WSA is unambiguous and is a demand obligation. It states:

> [EC] agree[s] **upon demand** to pay to GMAC the amount it advances or is obligated to advance to the manufacturer or distributor for each vehicle with interest at the rate per annum designated by GMAC from time to time and then in force under the GMAC Wholesale Plan.[23]

This provision contains express demand language on its face. Consistent with the authority we previously quoted from Allied, there is no time fixed for

---

[22] Id. quoting (11 AM. JUR. 2d Bills & Notes § 286 (1963)).

[23] Clerk's Papers at 86 (emphasis added).

when payment is due for GMAC's advances. The obligation matures when made. Likewise, there is no contingency specified upon which payment of the advances is to be made. And there is no contrary intention that appears either expressly or impliedly upon the face of this provision of the agreement. By these terms, the obligation of EC to pay its financial obligations to GMAC is upon demand by GMAC.

We also note that the "upon demand" provision appears to be a material provision governing the parties' lending relationship. The "upon demand" provision is located in the second paragraph of the WSA. It immediately follows language that establishes the lending relationship. That language states: "[EC] desire[s] [GMAC] to finance the acquisition of such vehicles and to pay the manufacturers or distributors therefor."[24] The location of the "upon demand" provision within the agreement suggests that the parties intended their relationship to be controlled by the "upon demand" terms.

In addition, the "upon demand" provision is one of few provisions restated in amendments to the WSA. The emphasis placed on this provision further supports our conclusion that the parties intended this provision to be central to their lending relationship.

EC initially argues that this provision is not a demand obligation because "there were contingencies upon which payment was to be made (i.e., the sale of vehicle followed by the corresponding payment to be made in a 'faithful and

---

[24] Id.

prompt' manner)."[25] But the "faithfully and promptly" provision, which is discussed later in this opinion, relates only to payments after the sale of vehicles. It does not affect EC's obligation to pay all amounts outstanding when GMAC makes demand for payment. There are no contingencies that affect a demand for payment. Thus, this argument is not persuasive.

EC also argues, without citation to any relevant authority, that the provision at issue is not a demand provision because it allegedly was not payable immediately on execution. Specifically, EC argues that on the date of execution of the WSA, no amounts were immediately due because no funds had been advanced and no vehicles had yet been sold. But a monetary obligation is matured and payable immediately "if no time is fixed and no contingency specified upon which payment is to be made."[26] That no funds had yet been advanced at the time the demand obligation was incurred does not affect the nature of the demand obligation. EC does not argue that once funds were advanced the demand obligation that then existed was magically extinguished. For these reasons, we also reject this argument.

Further, we will not read ambiguity into an agreement where it can reasonably be avoided.[27] Construing this provision as a demand obligation does not give rise to ambiguity due to other provisions of the WSA, as EC argues.

---

[25] Everett Chevrolet's Response Brief at 23 n.13.

[26] Allied, 10 Wn. App. at 536.

[27] See Mayer, 80 Wn. App. at 421 (quoting McGary, 99 Wn.2d at 285).

That is because all provisions to which these parties invite our attention can be harmonized and are not inconsistent.

Specifically, EC argues that the "interplay" between the "faithfully and promptly" language, set forth in the seventh paragraph of the WSA, and the "upon demand" language in the second paragraph that we just discussed creates ambiguity. We disagree.

The "faithfully and promptly" provision in the seventh paragraph, on which EC relies, states:

> [EC] understand[s] that [EC] may *sell and lease* the vehicles at retail in the ordinary course of business. *[EC] further agree[s]* that as each vehicle is sold, or leased, [EC] will, *faithfully and promptly* remit to [GMAC] the amount [GMAC] advanced or ha[s] become obligated to advance on [EC's] behalf to the manufacturer, distributor or seller, with interest at the designated rate per annum then in effect under the GMAC Wholesale Plan . . . .[28]

The plain words of the first sentence of this provision authorize EC to sell or lease, in the ordinary course of business, the vehicles that serve as collateral for its financial obligations to GMAC. The plain meaning of the second sentence of this provision is that EC "further agrees" to "faithfully and promptly" remit to GMAC the proceeds of such sales or leases to be applied to EC's financial obligations to GMAC. Significantly, the "further agrees" language of this provision separately obligates EC to remit sales and lease proceeds to GMAC. This obligation is in addition to its obligation to pay "upon demand" its financial obligations to GMAC that is contained in the earlier provision we already

---

[28] Clerk's Papers at 86 (emphasis added).

discussed in this opinion. There simply is no other reasonable meaning of this "faithfully and promptly" provision.

Nothing in the language of this provision diminishes or affects EC's separate obligation to pay GMAC "upon demand" for its financial obligations to GMAC. EC fails to establish that any claimed "interplay" between the "faithfully and promptly" language of this provision affects the express demand obligation in the second paragraph of the WSA. There simply is no genuine issue of material fact regarding the relationship of the "faithfully and promptly" provision to the "upon demand" provision.

Similarly, the existence of the "default" provision in the ninth paragraph of the WSA also does not give rise to ambiguity within the agreement. This provision addresses GMAC's ability to repossess collateral after default. It states:

> In the event [EC] default[s] in payment under and according to this agreement . . . GMAC may take immediate possession of said vehicles, without demand or further notice and without legal process . . . .[29]

This "default" provision does not refer either to the "upon demand" provision stated in the second paragraph of the WSA or to the "faithfully and promptly" provision in the seventh paragraph of this agreement. In short, this "default" provision does not affect EC's obligation to make payments under either of the other two provisions. Rather, it addresses GMAC's rights under the Uniform Commercial Code and otherwise to take possession of collateral

---

[29] Id.

securing the obligations of EC to GMAC in the event of a default. Accordingly, this "default" provision also does not create ambiguity regarding GMAC's right to demand payment under the second paragraph of the WSA.

Moreover, as our courts have consistently held, "An interpretation of a writing which gives effect to all of its provisions is favored over one which renders some of the language meaningless or ineffective."[30] There is nothing in this WSA that supports the view that other provisions are rendered either illogical or unnecessary if the "upon demand" provision of the second paragraph is construed as a demand obligation. In fact, if the agreement were construed in any other way, it is the "upon demand" provision that would be rendered meaningless.

To support its argument that there is ambiguity in the WSA, EC relies on authorities from other jurisdictions. They are not persuasive.

In Mente Chevrolet Oldsmobile Inc. v. GMAC, the United States Third Circuit Court of Appeals considered GMAC's appeal of an order denying its motion for judgment as a matter of law after a jury found in favor of Mente on its breach of contract claim.[31] Under the financing agreement between the parties in that case, Mente was required to make payments to GMAC "faithfully and promptly" upon the sales of cars.[32] Mente's breach of contract claim was

---

[30] Wagner v. Wagner, 95 Wn.2d 94, 101, 621 P.2d 1279 (1980).

[31] Mente Chevrolet Oldsmobile, Inc. v. GMAC, Inc., 451 F. Appx. 214, 216 (3rd Cir. 2011).

[32] Id.

premised on the fact that GMAC declared Mente "out of trust" for failing to make payments "faithfully and promptly."[33]

At trial, GMAC argued that it had a right to demand payment immediately upon sale of a car.[34] In contrast, Mente argued that the parties' course of dealing showed otherwise.[35] The jury found that GMAC had breached the financing agreement, presumably on the basis that immediate payment on sale was not required.[36]

Following the jury verdict, GMAC renewed its motion for judgment as a matter of law on the breach of contract claim.[37] GMAC argued that the "faithfully and promptly" provision of the financing agreement was unambiguous.[38] The federal district court denied GMAC's motion.[39]

On appeal, the Third Circuit held that the district court was correct. The court stated that the financing agreement was ambiguous "because the contract did not define 'faithfully and promptly' and the phrase is capable of being reasonably understood in more than one way."[40]

---

[33] Id.

[34] Id. at 217.

[35] Id.

[36] Id.

[37] Id.

[38] Id.

[39] Id.

[40] Id.

In a footnote, the court addressed a different argument by GMAC. GMAC argued that it was entitled to demand immediate payment by virtue of what the court described as "another clause" in the financing agreement.[41] The court gave no further explanation of what the other clause said. Nevertheless, it stated that "[t]he interaction between that clause and the 'faithfully and promptly' clause . . . is a question of fact that was properly submitted to the jury."[42]

The analysis in Mente is not helpful to our inquiry in this case. Whether the clause "faithfully and promptly" is capable of being understood in more than one way is not the proper focus of our inquiry. Our analysis is focused on the "upon demand" language in the second paragraph of this WSA. As we have already explained in this opinion, that language is not ambiguous. And the "faithfully and promptly" remit language of a separate provision does not create ambiguity for the "upon demand" provision.

While we could speculate on what the other clause to which the Mente court referred in the footnote in its opinion actually said, we decline to do so. The passing reference to "another clause" in the footnote is simply too incomplete to warrant the reliance on that opinion as EC argues.

Further, even if we speculated that the other clause briefly mentioned in the Mente footnote was a demand provision like the one here, the interaction between the clauses in this WSA is not a question of fact because this agreement is not ambiguous. As we have discussed in this opinion, the co-

---

[41] Id. at 217 n.3.

[42] Id.

existence of these provisions in this WSA does not give rise to ambiguity. The resolution of the relationship among the various provisions in this agreement is a question of law that we resolve in favor of GMAC.

EC also relies on Mente to argue that GMAC should be collaterally estopped from obtaining a different contract construction in this proceeding when it has previously litigated and lost the identical issue.[43] Because EC makes this argument for the first time on appeal and fails to establish a right to do so, we decline to address this argument.[44]

The other case on which EC relies is equally unpersuasive. In Bob Smith Automotive Group Inc., et al. v. Ally Financial Inc., a Maryland trial court judge considered Ally's motion for summary judgment on claims brought by Bob Smith Automotive for breach of contract and breach of the implied covenant of good faith and fair dealing.[45] Ally argued that it did not breach any contract because it made a simple and independent demand for immediate payment, that such a demand was authorized by the contracts, and that good faith did not apply. The court held that there were disputed material facts that precluded summary judgment.

---

[43] Everett Chevrolet's Response Brief at 25 n.15 (citing Mente, 451 F. Appx. 214 (3rd Cir. 2011)).

[44] See RAP 2.5(a).

[45] Bob Smith Auto. Grp., Inc. v. Ally Fin., Inc., No. 20-C-11-0075750 (Circuit Court, Talbot County, Md., 2012).

The judge examined provisions there that appear to be identical to those in the WSA at issue here. That judge held that the relationship between these provisions was ambiguous. Specifically, the judge stated:

> It is unclear when looking within the four-corners of the Wholesale Security Agreements as to whether the "on demand" provision in the WSA is independent of the "faithfully and promptly" and default provisions, or whether the three provisions are related in the ways alleged by the Plaintiffs. Such ambiguity is for a fact-finder to determine.[46]

Additionally, the court concluded that there was ambiguity as to how the "on demand" provisions within other agreements related to the provisions contained in that WSA.

We assume for purposes of this discussion that the trial judge's decision in that case has no precedential value in Maryland. Such a decision by a trial judge in Washington would lack precedential value. Nevertheless, we consider the rationale that judge stated.

For the reasons we already discussed in this opinion, we disagree with that judge's conclusion that there is any ambiguity about whether the "upon demand" provision in this WSA is independent of the "faithfully and promptly" provision. Likewise, there is no ambiguity about whether the "upon demand" provision in this WSA is affected by the "default provision."

Additionally, unlike Bob Smith Automotive, in this case there is no argument that the "on demand" provisions in agreements other than the WSA create ambiguity. This fact is a further material distinction of this case from that.

---

[46] Id.

16

Finally, we note that the Revolving Line of Credit Agreement between these parties also has a demand provision as one of its terms. Specifically, that agreement provides, in part, as follows:

(ii) <u>Mandatory Repayment of Credit Line Advances</u>.

. . .

> (C) **If demanded**, the full amount of the Credit Line Advances plus accrued interest must be paid immediately upon demand by GMAC.[47]

By letter dated December 15, 2008, GMAC made demand for payment of the full credit line advances in addition to demand for payment of the amounts owed under the WSA. EC does not argue that the demand provision of the RLCA is unenforceable. Accordingly, there is no genuine issue of material fact whether this agreement also contains a demand obligation.

In sum, the only reasonable reading of the WSA is that the financing relationship is governed by the unambiguous demand obligation stated in the second paragraph of the agreement. Likewise, the demand language in the RLCA is also a demand obligation. Accordingly, case law examining the relationship between demand obligations and the duty of good faith is instructive.

*Duty of Good Faith and Demand Obligations*

GMAC argues that the trial court erred by applying the duty of good faith to a demand obligation, contrary to Washington case law. Specifically, GMAC argues that any attempt to rely on the duty of good faith to bar the right to make a demand under a demand obligation fails as a matter of law. We agree.

---

[47] Clerk's Papers at 272-73 (emphasis added).

The controlling case in Washington is Allied.[48] In that case, Peoples National Bank of Washington financed Allied's sheet metal fabricating plant under the terms of security agreements.[49] Allied pledged accounts receivable and other collateral to secure the loans.[50] The loans in question were made on the basis of demand promissory notes.[51]

After making additional loans, Peoples decided to take immediate steps to collect Allied's total accrued debt which totaled over $420,000.[52] It took action by applying Allied's checking account deposits in the bank to the debt.[53] Peoples did not give prior notice to Allied, and outstanding checks issued by Allied were dishonored.[54] Peoples then demanded payment of the entire remaining loan balance.[55] Allied sued Peoples for damages, claiming bad faith on the part of the bank.[56] The trial court granted Peoples' motion for summary judgment.[57]

---

[48] 10 Wn. App. 530, 518 P.2d 734 (1974).

[49] Id. at 531.

[50] Id.

[51] Id.

[52] Id.

[53] Id.

[54] Id.

[55] Id. at 532.

[56] Id.

[57] Id. at 534.

On appeal, this court affirmed.[58] This court's analysis focused on the nature of the agreements between Allied and Peoples. Specifically, it held that the terms of these agreements gave Peoples the right to demand payment of these notes and offset the checking accounts without notice "because they are demand notes, because that is the contract that the parties made."[59]

Furthermore, this court noted that although the action taken by Peoples caused problems for the borrower, "that is the agreement that the parties made by appropriate written instruments."[60] The court stated:

> Although these facts might raise questions as to the bank's business judgment, they create no factual issue as to the bank's right to do what it did, and so are not material facts. This is particularly so under our interpretation of what constituted the agreement between the parties, namely, the terms of the demand notes.[61]

This court then affirmed the grant of summary judgment in favor of Allied.[62] Our supreme court denied review.

This approach is consistent with the majority of courts who have examined demand instruments in the context of good faith claims.[63] Courts have generally rejected the application of good faith on the grounds that it may not be applied to

---

[58] Id. at 541.

[59] Id. at 534.

[60] Id.

[61] Id. at 536 n.5.

[62] Id. at 541.

[63] GERALD L. BLANCHARD, 1 LENDER LIABILITY: LAW, PRAC. & PREVENTION § 2:13 (2013).

"override the intention of the maker, who signed the instrument, to grant the holder the option to call for payment, with or without reason."[64] Courts carefully protect the principle of freedom to contract and establish the terms of the contract.[65]

Here, as in Allied, the "upon demand" provision gave GMAC a right to make a demand for payment of all accrued amounts for any reason or no reason. This is so even if GMAC chose, as in this case, to specify reasons in its December 15, 2008 letter why it was making demand. Moreover, as in Allied, possible detriment to EC's business did not bar the right to make demand.

In sum, GMAC's demand was not barred by the duty of good faith.

EC argues that even if GMAC had a demand obligation, it did not make a simple demand but instead declared an alleged default. Thus, EC argues that GMAC is now estopped from claiming that it could have called a simple demand based on the demand provision discussed above. But EC fails to establish the required elements to support this claim.

"Equitable estoppel is based on the notion that 'a party should be held to a representation made or position assumed where inequitable consequences would otherwise result to another party who has justifiably and in good faith relied

---

[64] Carolyn M. Edwards, Article 3 Demand Notes and the Doctrine of Good Faith, 74 MARQ. L. REV. 481, 483 (1991).

[65] Id. at 485.

thereon."[66] "The elements of equitable estoppel are: '(1) an admission, statement or act inconsistent with a claim afterwards asserted, (2) action by another in [reasonable] reliance upon that act, statement or admission, and (3) injury to the relying party from allowing the first party to contradict or repudiate the prior act, statement, or admission.'"[67]

The party asserting equitable estoppel must prove each of its elements "by clear, cogent, and convincing evidence."[68]

EC fails to do this on appeal. EC only makes argument related to the first element—that GMAC acted inconsistently with its stated reasons for making the demand. But there is no evidence that EC reasonably relied on GMAC's initial reason for calling the demand. EC also fails to show that it was injured as a result of this alleged reliance. Accordingly, there is no genuine issue of material fact supporting this claim. We reject it.

We also note that EC's argument is based on a letter from GMAC dated December 19, 2008, and EC ignores the earlier letter dated December 15, 2008. The earlier letter made demand for payment of all amounts accrued under both the WSA and RLCA. In view of that undisputed fact, it is difficult for us to see

---

[66] Lybbert v. Grant County, 141 Wn.2d 29, 35, 1 P.3d 1124 (2000) (quoting Kramarevcky v. Dep't of Soc. & Health Servs., 122 Wn.2d 738, 743, 863 P.2d 535 (1993)).

[67] Id. (alteration in original) (quoting Bd. of Regents of U.W. v. City of Seattle, 108 Wn.2d 545, 551, 741 P.2d 11 (1987)).

[68] Robinson v. City of Seattle, 119 Wn.2d 34, 82, 830 P.2d 318 (1992).

why the December 19, 2008 letter creates any genuine issue of material fact for trial. EC's arguments to the contrary are unpersuasive.

*Breach of Specific Contract Terms*

GMAC next contends that the duty of good faith exists only in relation to performance of a specific contract term. GMAC argues that EC did not identify any specific contract term breached in bad faith and that summary judgment should have been granted in its favor. We again agree.

The controlling case is Badgett v. Security State Bank.[69] The Badgetts brought an action for damages against Security State Bank after it refused to restructure their agricultural loans.[70] The Badgetts wanted to retire from the dairy business and participate in the federal government's Dairy Termination Program.[71] They asked the Bank to accept partial payment of the debt and deferral of a portion of the payments due.[72] Negotiations with the Bank failed, and the Badgetts stopped making payments.[73]

The Badgetts sued the bank for $2,000,000 in damages alleging that the bank had unreasonably refused permission for the Badgetts to participate in the federal program.[74] The trial court granted summary judgment to the Bank, ruling

---

[69] 116 Wn.2d 563, 807 P.2d 356 (1991).

[70] Id. at 565.

[71] Id. at 566.

[72] Id.

[73] Id. at 567.

[74] Id.

that it was under no duty to negotiate and that a prior course of conduct cannot create a new obligation on the Bank.[75]

On appeal, Division Two reversed.[76] It held that there was enough evidence "to support a reasonable inference that the parties' course of dealing had created a good faith obligation on the part of the Bank to consider the Badgetts' proposals."[77] It also held that the existence of a course of dealing and good faith are issues of fact.[78]

The supreme court reversed.[79] It held that the duty of good faith does not inject substantive terms into the contract; rather, "it requires only that the parties perform in good faith the obligations imposed by their agreement."[80] The duty arises "only in connection with terms agreed to by the parties."[81] There is not a "free-floating duty of good faith unattached to the underlying legal document." [82]

---

[75] Id. at 567-68.

[76] Id. at 568.

[77] Id. (quoting Badgett v. Security State Bank, 56 Wn. App. 872, 878, 786 P.2d 302 (1990)).

[78] Id.

[79] Id. at 575.

[80] Id. at 569.

[81] Id.

[82] Id. at 570.

The court held that "[a]s a matter of law, there cannot be a breach of the duty of good faith when a party simply stands on its rights to require performance of a contract according to its terms."[83]

Here, EC failed to identify any specific contract term that GMAC allegedly breached. In its opposition to summary judgment, EC argued that GMAC's failure to disclose material facts "constituted a breach of the implied duty of good faith and fair dealing."[84] But, as Badgett held, the duty of good faith does not inject substantive terms into the contract, and the duty arises only in connection to the underlying legal document.[85]

EC's only attempt to connect GMAC's alleged bad faith to the contract terms was when it argued that GMAC's bad faith "interfered with EC's business operations and ability to perform under the contract."[86] But this assertion falls short of what Badgett requires. It does not specify what contract terms were allegedly at issue.

At oral argument before the trial court, the court even remarked that EC had failed to identify a contract provision that GMAC had violated. EC did not make any further attempt to identify a specific contract term.

EC argues that Badgett presents no bar to its claim because "GMAC's conduct of which Everett Chevrolet complains stems directly from the rights and

---

[83] Id.

[84] Clerk's Papers at 62.

[85] Badgett, 116 Wn.2d at 569.

[86] Clerk's Papers at 76.

obligations expressly stated in the WSA and RLCA (i.e., the circumstances under which a default may properly be declared and the circumstances under which a default, left uncured, can lead to a demand)."[87] But, as we discussed earlier in this opinion, this general claim simply falls short of Badgett's requirements.

EC also argues that GMAC breached the "faithfully and promptly" provisions of the WSA by wrongfully calling a default based on a purported failure to pay upon sale or lease of the vehicles. But this argument is raised for the first time on appeal. For the same reasons we do not reach the collateral estoppel argument, we do not reach this argument.[88]

In sum, we conclude that the "upon demand" provision in the WSA is a demand obligation that is not barred by the duty of good faith. For the same reason, the demand language in the RLCA is not barred by the duty of good faith. We also conclude that EC failed to allege a claim based on a specific contract term as required by Badgett. For these reasons, denial of summary judgment was improper.

## TORTIOUS INTERFERENCE CLAIMS

EC argues that GMAC has abandoned its argument that it is entitled to summary judgment on EC's claims for tortious interference. We disagree.

---

[87] Everett Chevrolet's Response Brief at 31.

[88] See RAP 2.5(a); State v. McFarland, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995) ("As a general rule, appellate courts will not consider issues raised for the first time on appeal.").

In GMAC's motion for summary judgment, GMAC asked the court to enter an order of summary judgment dismissing "EC's claims of bad faith."[89] In a footnote, GMAC indicated that this included "EC's first through third counterclaims . . . ."[90]

EC's first through third counterclaims were as follows: (1) breach of contract by wrongful acceleration of wholesale financing arrangement, (2) breach of duty of good faith and fair dealing, and (3) tortious interference with business expectancies. These counterclaims were based on GMAC's alleged bad faith conduct.

The order entered by the trial court denied GMAC's motion for summary judgment.[91] We conclude that the order was directed to all claims that GMAC identified in its motion, including the tortious interference claim.

These claims appear to have been intertwined from the outset, and the record indicates all claims were before the court in GMAC's motion. EC's arguments to the contrary are unpersuasive.

## MOTION TO STRIKE AND REQUEST FOR SANCTIONS

GMAC moves to strike ultra-jurisdictional authority cited by EC in its brief and also seeks sanctions for the unauthorized citations to unpublished authority. We grant, in part, the motion to strike, disregarding certain materials not properly before us. We deny the motion for sanctions.

---

[89] Clerk's Papers at 506.

[90] Id.

[91] Id. at 21.

*Motion to Strike*

Under RAP 10.4(h) and GR 14.1(b), a party may cite to an unpublished opinion of a court from another jurisdiction "only if citation to that opinion is permitted under the law of the jurisdiction of the issuing court."[92]

In its Response Brief, EC cites to three unpublished cases that are ultra-jurisdictional: (1) Bob Smith Automotive,[93] an unpublished memorandum opinion and order of a trial judge in Maryland; (2) Weed v. Ally Financial Inc.,[94] an unpublished order on a motion for summary judgment issued from a federal district court in Pennsylvania; and (3) Mente,[95] an unpublished opinion from the Third Circuit.

We have exercised our discretion and have considered the first and third of the above cases, as shown by our discussion of them earlier in this opinion. But GR 14.1(b) states that the party citing the opinion "shall file and serve a copy of the opinion with the brief or other paper in which the opinion is cited." EC did not comply with this requirement because it did not file and serve a copy of the Weed case with its brief. Accordingly, we grant the motion, in part, and do not consider the Weed case.

---

[92] GR 14.1(b).

[93] No. 20-C-11-0075750 (Circuit Court, Talbot County, Md., 2012).

[94] No. 2:11-cv-2808 (E.D. Pa., 2013).

[95] 451 F. Appx. 214 (3rd Cir. 2011).

*Sanctions*

GMAC seeks imposition of sanctions upon EC for unauthorized citation to unpublished cases. Because we have considered two of the three cases and do not perceive any substantial prejudice to GMAC in doing so, we deny the motion for sanctions.

## APPEARANCE OF FAIRNESS

GMAC argues that reversal and remand to a different trial judge is necessary in order to safeguard the appearance of fairness.

It is "fundamental to our system of justice" that judges are fair and unbiased.[96] Moreover, "[t]he appearance of bias or prejudice can be as damaging to public confidence in the administration of justice as would be the actual presence of bias or prejudice."[97] "The law goes farther than requiring an impartial judge; it also requires that the judge appear to be impartial."[98] Even "a mere suspicion of irregularity, or an appearance of bias or prejudice" should be avoided by the judiciary.[99]

Litigants "must submit proof of actual or perceived bias to support an appearance of impartiality claim."[100] The "critical concern in determining whether

---

[96] Chi., Milwaukee, St. Paul. & Pac. R.R. Co. v. Wash. State Human Rights Comm'n, 87 Wn.2d 802, 807, 557 P.2d 307 (1976).

[97] State v. Madry, 8 Wn. App. 61, 70, 504 P.2d 1156 (1972).

[98] Id.

[99] Pac. R.R. Co., 87 Wn.2d at 809.

[100] Magana v. Hyundai Motor Am., 141 Wn. App. 495, 523, 170 P.3d 1165 (2007), rev'd on other grounds, 167 Wn.2d 570, 220 P.3d 191 (2009).

a proceeding satisfies the appearance of fairness doctrine is how it would appear to a reasonably prudent and disinterested person."[101]

Here, GMAC submitted evidence of perceived bias, which we need not detail in this opinion. But we conclude that it is unnecessary to decide whether the trial judge violated the appearance of fairness doctrine in this case. Rather, we conclude from this record and the history of this case that a just and expeditious resolution of this case will be best served by remanding this case to a different judge for further proceedings on remand. That judge will have the opportunity to provide a fresh perspective to the proper and prompt resolution of this case.

We reverse the order denying GMAC's motion for summary judgment, remand this case to a different judge, direct that judge to enter summary judgment on these claims in favor of GMAC and to conduct such further proceedings in this case as are required. We grant, in part, GMAC's motion to strike and deny its motion for sanctions.

Cox, J.

WE CONCUR:

Spearman, A.C.J.

Appelwick, J.

---

[101] Pac. R.R. Co., 87 Wn.2d at 810.