IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 24958-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JON GABRIEL DEVON, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Jon DeVon appeals his conviction for homicide by abuse. He raises several issues, but we find it necessary only to address three: (1) whether Mr. DeVon's right to a public trial was violated, (2) whether the State presented sufficient evidence to establish a pattern or practice of abuse; and (3) whether the lower court must recuse itself on remand. We answer the first two questions in the affirmative, reverse Mr. DeVon's conviction as required by recent Supreme Court precedent, and remand for a new trial. We find no need for the lower court to recuse itself.

## FACTS

Mr. DeVon was charged by amended information with homicide by abuse. The charges resulted from the February 1, 2005, death of 22 month old A.R.V. A.R.V. was the son of Mr. DeVon's wife, Yolanda DeVon, and lived with the couple. Ms. DeVon was also charged in A.R.V.'s death. The defendants' cases were joined at trial.

At a pretrial hearing on December 19, 2005, counsel for Ms. DeVon raised the issue of conducting individual voir dire in chambers. The court discussed beginning general voir dire questioning to determine which jurors had heard of the case, and then moving to individual voir dire in chambers to weed out biased jurors. In addition, Mr. DeVon orally requested that jurors be sequestered throughout the trial to protect them from being tainted. Ms. DeVon joined in that motion. The court denied the motion to sequester, but agreed to revisit the motion depending on the juror responses during voir dire.

When the court convened on January 10, 2006, the venire jurors answered general questions and completed written questionnaires. In response to a question of whether any had heard of the case, a large number responded that they had. In the afternoon, the court announced that individual voir dire of all jurors would be conducted in chambers in the presence of the parties, counsel, and the court reporter. Prior to proceeding in that

2

manner, the court did not conduct a *Bone-Club*[1] analysis. After nearly two days of individual voir dire in chambers, the court reconvened in the courtroom to complete the voir dire process.

At trial, Ms. DeVon's mother, Ms. Debra Garrison, testified that she observed bruising on A.R.V.'s legs, arms and cheeks weeks before A.R.V.'s death. Ms. Garrison also reported that Mr. DeVon and Ms. DeVon admitted to biting A.R.V. on the arm as a form of discipline.

Additionally, multiple witnesses testified that they observed injuries to A.R.V. between January 25 and January 31, 2005. Testimony established that A.R.V. was in the care of the DeVons during this time frame, and A.R.V. would often spend time with Mr. DeVon outside of Ms. DeVon's presence.

The DeVons' explanation for the injuries given to witnesses were contradictory. The most common explanation given and also reported to police was that A.R.V. fell off of a woodpile sometime around January 28 or 29. However, witnesses present with Mr. DeVon and A.R.V. on those days did not see A.R.V. fall off a woodpile. Instead, the witnesses said that A.R.V. fell near a woodpile and/or on a porch. The witnesses also said that A.R.V. fell onto his hands and did not seem affected by the incident. One

---

[1] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

witness said A.R.V. suffered only a few red marks on his face and slivers in his hands, while another witness said A.R.V. did not hit his head.

Testimony established that Ms. DeVon reported to coworkers on January 29 and 30, two days before A.R.V.'s death, that A.R.V. was sick and vomiting. Ms. DeVon told some of the workers, but not others, about A.R.V.'s fall from the woodpile. Witnesses said that Ms. DeVon was not worried about the multiple bruises covering A.R.V. Ms. DeVon did not want to take A.R.V. to the hospital because she was afraid of what others might think.

Testimony from those treating A.R.V. when he arrived at the hospital in the early morning of January 31 was that A.R.V. was in full cardiac arrest and had been so for some time. One doctor reported that A.R.V. "basically appeared dead." Report of Proceedings at 759. One witness described A.R.V. as unrecognizable due to the swelling. Another thought he had been in a traumatic accident due to the extent of his visible injuries.

A doctor who helped treat A.R.V., testified that the numerous injuries to A.R.V. were extensive. He testified that the type of retinal hemorrhages and brain injury A.R.V. suffered could not have resulted from a direct or accidental blow to the head. Instead, the

4

doctor described that the location, nature, and shape of many of the injuries indicated that they were clearly inflicted injuries and not accidental.

A pediatric neurologist who also evaluated A.R.V. noted the extensive injuries. The neurologist indicated that A.R.V. suffered from multiple types of trauma occurring both relatively recently and from a longer time ago. He testified that the severe injury was not one he would expect to see from a short fall from a woodpile but that most likely occurred as the result of non-accidental trauma or child abuse. He indicated that the amount of retinal hemorrhages indicated significant force was applied to A.R.V.'s head either by shaking or repeated blows.

The jury found Mr. DeVon guilty of homicide by abuse. The court sentenced Mr. DeVon to 450 months of confinement. The jury found Ms. DeVon guilty of second degree manslaughter. The court sentenced Ms. DeVon to 27 months of confinement.

Mr. DeVon appealed to this court in 2006, claiming among other errors, that his right to a public trial was violated when the trial court allowed individual voir dire in chambers. We stayed his appeal pending a decision by the Supreme Court in *State v. Frawley*, 181 Wn.2d 452, 334 P.3d 1022 (2014). We lifted the stay subsequent to the recent decision in *Frawley*. We now address his appeal.

5

ANALYSIS

I.    *Whether Mr. DeVon's right to a public trial was violated when the trial court allowed individual questioning of venire jurors in chambers*

Review of a defendant's public trial right challenge on direct appeal is a question of law that receives de novo review. *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005).

Article I, section 22 of the Washington Constitution and the Sixth Amendment to the United States Constitution guarantee a defendant the right to a public trial. *State v. Njonge*, 181 Wn.2d 546, 553, 334 P.3d 1068, *cert. denied*, 135 S. Ct. 880, 190 L. Ed. 2d 711 (2014). However, the right to a public trial is not absolute. *Id.* A trial court may close a courtroom to the public if it finds the closure is justified. *Id.* Prior to closure, the trial court must balance several factors on the record by conducting a *Bone-Club* analysis. *Id.*

"*Bone-Club* requires that trial courts at least: name the right that a defendant and the public will lose by moving proceedings into a private room; name the compelling interest that motives closure; weigh these competing rights and interests on the record; provide the opportunity for objection; and consider alternatives to closure, opting for the least restrictive." *State v. Wise*, 176 Wn.2d 1, 10, 288 P.3d 1113 (2012).

6

A defendant's right to a public trial applies to jury selection. *Id.* at 11. "[T]he public trial right in voir dire proceedings extends to the questioning of individual prospective jurors." *Id.* The private questioning of individual jurors in chambers is a courtroom closure that requires a *Bone-Club* analysis before questioning occurs. *Id.* at 11-12.

It is the trial court's responsibility to weigh the *Bone-Club* factors and enter specific findings to support the closure. *Bone-Club*, 128 Wn.2d at 260-61. On appeal, "[w]e do not comb through the record or attempt to infer the trial court's balancing of competing interests where it is not apparent in the record." *Wise*, 176 Wn.2d at 12-13.

A trial court's failure to give any consideration to the *Bone-Club* factors before closing a courtroom for voir dire is a structural error that is presumed to be prejudicial. *Wise*, 176 Wn.2d at 14.[2] An improper courtroom closure violates the fundamental constitutional right to a public trial and is not subject to a harmless error analysis. *State v.*

---

[2] *But see State v. Momah*, 167 Wn.2d 140, 217 P.3d 321 (2009) where the voir dire courtroom closure without a *Bone-Club* analysis was not considered a structural error because the trial court effectively considered the *Bone-Club* factors and the defendant was an active proponent of the closure. "At bottom, *Momah* presented a unique confluence of facts: although the court erred in failing to comply with *Bone-Club*, the record made clear—without the need for a post hoc rationalization—that the defendant and public were aware of the rights at stake and that the court weighed those rights, with input from the defense, when considering the closure." *Wise*, 176 Wn.2d at 14-15.

*Easterling*, 157 Wn.2d 167, 181-82, 137 P.3d 825 (2006). We do not consider this kind of public trial right violation to be de minimis or trivial. *Id.* at 180-81. "[W]e cannot know what the jurors might have said differently if questioned in the courtroom; what members of the public might have contributed to either the State's or defense's jury selection strategy; or, if the judge had properly closed the court under a *Bone-Club* analysis, what objections, considerations, or alternatives might have resulted and yielded." *Wise*, 176 Wn.2d at 18.

A defendant's failure to object to a public trial violation does not preclude appellate review under RAP 2.5. *State v. Paumier*, 176 Wn.2d 29, 36, 288 P.3d 1126 (2012). The improper closure of the courtroom during voir dire is presumed to be prejudicial to the defendant and, correspondingly, is a manifest error affecting a constitutional right. *Id.* at 36-37. Similarly, a defendant's failure to object at trial does not equate to a waiver of his right to a public trial. *Brightman*, 155 Wn.2d at 514-15.

A defendant may affirmatively waive his right to a public trial if the waiver is knowingly, voluntarily, and intelligently given. *Frawley*, 181 Wn.2d at 461-62 (plurality opinion). A valid waiver can occur in the absence of a *Bone-Club* analysis. *Id.* at 467 (plurality opinion) (Stephens, J., concurring with seven concurring and dissenting justices in agreement). The Washington Supreme Court has not agreed on the standard or process

for ensuring that a defendant's waiver is knowing, voluntary, and intelligent, but the prevailing opinion is that waiver "can be met without the same type of 'on-the-record colloquy' that waiver of certain other rights (like the right to counsel) requires." *Id.* at 473. Still, a valid wavier will not be found if the record presents no evidence that the defendant knew that he was waiving his right to a public trial, understood what the right entailed, and voluntarily agreed to waive his right. *State v. Shearer*, 181 Wn.2d 564, 575-76, 334 P.3d 1078 (2014) (plurality opinion) (McCloud, J., concurring).

Here, Mr. DeVon's right to a public trial was violated. The trial court allowed private questioning of jurors in chambers. This courtroom closure occurred without first conducting a *Bone-Club* analysis. Moreover, although a large number of venire jurors responded that they had heard of the case, all venire jurors were questioned individually in chambers. The trial court's failure to give any consideration to the *Bone-Club* factors before allowing private questioning in chambers is a structural error that is presumed to be prejudicial to Mr. DeVon. Furthermore, there is no evidence in the record that Mr. DeVon knowingly, voluntarily, and intelligently waived his right to a public trial. Despite the State's contentions, Mr. DeVon did not suggest the courtroom closure; the suggestion was made by Mr. DeVon's wife. Also, although Mr. DeVon suggested and argued for

sequestration of the jury, his advocacy for sequestration does not evidence an intention to waive his right to a public trial.

The appropriate remedy for a violation of a defendant's constitutional right to a public trial is reversal and remand for a new trial. *Easterling*, 157 Wn.2d at 182. "Although a new trial will undoubtedly place on the affected community an extremely difficult burden, a burden that will be particularly painful for the families and friends of the victims of the crimes charged in this case, our duty under the constitution is to ensure that, absent a closure order narrowly drawn to protect a clearly identified compelling interest, a trial court may not exclude the public or press from any stage of a criminal trial." *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 800, 100 P.3d 291 (2004).

II.     *Whether the State presented sufficient evidence to establish guilt beyond a reasonable doubt*

We address Mr. DeVon's sufficiency of the evidence challenge because, if successful, the remedy of reversal and dismissal would alleviate the need for a new trial to address the public trial violation.

Mr. DeVon contends that the State failed to establish all of the elements of homicide by abuse. Specifically, he contends that the State did not prove that he previously engaged in a pattern or practice of assault or torture of A.R.V.

10

In every criminal prosecution, due process requires that the State prove, beyond a reasonable doubt, every fact necessary to constitute the charged crime. *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). When a defendant challenges the sufficiency of the evidence, the proper inquiry is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Id.* Furthermore, "[a] claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.*

Circumstantial evidence and direct evidence are equally reliable. *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004). An appellate court "must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

"A person is guilty of homicide by abuse if, under circumstances manifesting an extreme indifference to human life, the person causes the death of a child or person under

sixteen years of age, . . . and the person has previously engaged in a pattern or practice of assault or torture of said child." RCW 9A.32.055.

Here, the evidence is sufficient to show that Mr. DeVon engaged in a practice or pattern of abuse of A.R.V. The pattern of abuse was established by the extensive medical evidence showing a huge number of inflicted injuries, pattern injuries, observed changes in the child's demeanor, injuries observed by other witnesses more than one week before death, and statements made by both defendants admitting to biting and swatting A.R.V. After viewing the evidence in the light most favorable to the State, a rational trier of fact could have found Mr. DeVon guilty beyond a reasonable doubt. Therefore, we reverse Mr. DeVon's conviction, but remand for a new trial.

III.    *Whether Judge Allan must recuse herself from the new trial*

Mr. DeVon also requests that we direct Judge Allan to recuse herself from the criminal proceeding on remand. He contends that Judge Allan could be perceived as being impartial, and for this reason, must recuse herself.

Judge Allan previously heard a three-hour shelter care hearing involving the DeVons' other child. The subject of that hearing concerned the DeVons' request for increased visitation. Judge Allan did not reduce Mr. DeVon's visitation, but rather maintained the status quo. In denying Mr. DeVon's earlier motion to recuse, Judge Allan

stated that she did not have knowledge of personal matters as prohibited by Cannon of

Judicial Conduct, (3)D.[3] Mr. DeVon presents no evidence to the contrary. Rather, he

speculates that she might have been exposed to information that made her biased.

The appearance of fairness doctrine is based on the fundamental notion in our

system of justice that judges must be fair and unbiased. *GMAC v. Everett Chevrolet, Inc.,*

179 Wn. App. 126, 153, 317 P.3d 1074 (2014). Judges must not only be impartial, but

they must also demonstrate the *appearance* of impartiality. *Id.* at 154. "Even 'a mere

suspicion of irregularity, or an appearance of bias or prejudice' should be avoided by the

judiciary." *Id.* (quoting *Chi., Milwaukee, St. Paul & Pac. R.R. v. Wash. State Human

Rights Comm'n,* 87 Wn.2d 802, 809, 557 P.2d 307 (1976)). There must be proof by the

litigant of actual or perceived bias to support an appearance of impartiality claim. *Id.*

Whether a proceeding satisfies the appearance of fairness doctrine is judged by how it

appears to a reasonably prudent person. *Id.*

We find no basis to order Judge Allan to recuse herself. Mr. DeVon has failed to

prove actual or perceived bias. Simply because Judge Allan presided over a hearing

---

[3] Former Canon 3(D) provides in relevant part: (1) Judges should disqualify themselves in a proceeding in which their impartiality might reasonably be questioned, including but not limited to instances in which: (a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

which involved Mr. DeVon, and even decided that hearing adversely to him, does not establish actual or perceived bias. Nor does it establish that she has personal knowledge of a disputed fact in the criminal proceeding. Moreover, during the criminal trial, Judge Allan made decisions that favored Mr. DeVon. Judge Allan dismissed the alternative count against Mr. DeVon of first degree murder by extreme indifference and denied the State's motion to amend the information to include a count of first degree premeditated murder. A reasonable prudent person could not perceive that Judge Allan had any actual or perceived bias against Mr. DeVon.

We reverse Mr. DeVon's conviction and remand for a new trial.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Fearing, J.

14