HOPKINS PONTIAC GMC, INC., Plaintiff,

v.

ALLY FINANCIAL INC., f/k/a GMAC LLC, f/k/a General Motors Acceptance Corporation and General Motors LLC, Defendants.

Case No. 5:14–cv–00183–RS–EMT.

United States District Court,
N.D. Florida,
Panama City Division.

Signed Nov. 20, 2014.

lawful. (Doc. 72 at 8). Because this request was first made in a reply brief, it is not properly before the Court at this time.

Robert D. Sale, Sale Law Firm PA, Panama City, FL, for Plaintiff.

Dixon Ross McCloy, Jr., Harrison Sale McCloy Etc., Panama City, FL, Jeffrey Alan Lipps, David John Barthel, Carpenter & Lipps LLP, Columbus, OH, Steven Ira Klein, Rumberger Kirk & Caldwell PA, Orlando, FL, for Defendants.

## ORDER

RICHARD SMOAK, District Judge.

Before me are Defendant General Motors LLC's Motion to Dismiss Plaintiff's Complaint (Doc. 15), Plaintiff's Memorandum of Law in Opposition to Defendant General Motors LLC's Motion to Dismiss (Doc. 28), Defendant Ally Financial, Inc.'s Motion for Judgment on the Pleadings (Doc. 19), and Plaintiff's Memorandum of Law in Opposition Defendant Ally Financial, Inc.'s Motion to Dismiss (Doc. 38).

Plaintiff Hopkins GMC, an automotive dealer and formerly a General Motors franchisee, alleges that Defendant General Motors, an auto manufacturer, and Defendant GMAC, a financing company, conspired against it to destroy its business and eventually force it sell its GMC franchise at a substantial loss. Both defendants have moved to dismiss the complaint. After review of the 14 count Complaint, I find that Hopkins has failed to state any claim upon which relief can be granted, and the motions to dismiss are granted.

## I. STANDARD OF REVIEW

To overcome a motion to dismiss, a plaintiff must allege sufficient facts to

state a claim for relief that is plausible on its face. *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Granting a motion to dismiss is appropriate if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). I must construe all allegations in the complaint as true and in the light most favorable to the plaintiff. *Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp.,* 208 F.3d 1308, 1310 (11th Cir.2000) (citing *Lowell v. American Cyanamid Co.,* 177 F.3d 1228, 1229 (11th Cir.1999)).

## II. *BACKGROUND*

Plaintiff Hopkins Pontiac GMC, Inc., ("Hopkins") was a franchised General Motors GMC dealer in Marianna, Florida. (Doc. 1 at 4). It held the franchise pursuant to a dealer agreement with Defendant General Motors. (*Id.*). It financed some of its inventory through a loan and credit agreement with Defendant General Motors Acceptance Corporation ("GMAC"). (*Id.*). GMAC (since rebranded as Ally Financial) is engaged in automotive financing and issued dealer floor plan financing arrangements to a large percentage of General Motors dealerships. (*Id.* at 3).

█ I note at the offset that although the complaint alleges that GMAC was under the control of General Motors, this allegation is a legal conclusion rather than a factual allegation, and the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Chandler v. Sec'y of Florida Dep't of Transp.,* 695 F.3d 1194, 1199 (11th Cir.2012). Instead, I take judicial notice of the well-known and indisputable fact that GMAC was an independent entity by the time the events in question occurred. *See generally Taxpayers Continue to Own 74% of GMAC (Rebranded as Ally Financial Inc.) from the TARP Bailouts,* Special Inspector General for the Troubled Asset Relief Program (Jan. 30, 2013) (online at www.**sigtarp**.gov/**Audit**% 20**Reports**/Taxpayers_**GMAC**.pdf) ("On November 30, 2006, ... GM spun off a *controlling interest* in GMAC (a 51% interest) to an investor group led by the private equity fund Cerberus Capital Management L.P.") (emphasis added); *see also* Fed. R.Evid. 201. Furthermore, by December 30, 2009—before the date of any of the Complaint's allegations against GMAC— the United States Government owned 56% of GMAC through the Troubled Assets Relief Program Bailouts. *Id.*

### a. *GMAC and the Financing Arrangements*

GMAC had issued Hopkins "Floor Plan" loan agreements that consisted of a wholesale line of credit to purchase cars for sale to consumers. (*Id.* at 4).

GMAC, in early 2010, in an alleged "furtherance of the strategy and agreement to eliminate Hopkins GMC as a General Motors' dealer," (*Id.* at 6), took an escalating series of actions relating to the financing arrangements. (*Id.*). It reduced the available floor plan inventory, conducted daily audits that were billed to Hopkins, required immediate payment of vehicles upon sale (rather than the customary three days), raised interest rates, suspended credit, and eventually demanded the sale of the franchise of immediate satisfaction of all debt. (*Id.*). By June 2010, GMAC told Hopkins that it would seize its vehicle inventory unless Hopkins sold its franchise or paid in full by October 8, 2010. (*Id.* at 10–11).

When Hopkins's relations with GMAC soured, General Motors would not consent to Hopkins obtaining an alternative credi-

tor. (*Id.* at 6–7). General Motors also refused to sell new vehicles or parts unless it received cash or certified check, and withheld warranty and rebate payments. (*Id.* at 7).

### b. General Motors and the Franchise Agreement

From about August 2009 to March 2010, General Motors caused Hopkins to believe that it would obtain a Buick franchise to go alongside its GMC franchise. (Doc. 1 at 4–5). In reliance on General Motors' representations, Hopkins took out a $1.5 million mortgage against its property and raised $200,000 to $300,000 in additional equity from its principals. (*Id.* at 5).

However, in March 2010, General Motors told Hopkins that it would not receive a Buick franchise, but General Motors would be willing to negotiate the sale of Hopkins's GMC franchise to another local General Motors franchise, Rahal Buick. (*Id.* at 10). It also offered to pay a portion of Hopkins's selling price. (*Id.*). In September, however, General Motors told Hopkins that it would not pay any of the requested selling price. (*Id.* at 11).

As a result of all these events, Hopkins was "forced" to sell its franchise to Rahal on October 7, 2010—one day before GMAC's foreclosure deadline—at a substantially reduced price. (*Id.*).

On August 6, 2014, Hopkins filed suit in this court on the basis of both federal question and diversity jurisdiction. It alleged against both General Motors and GMAC claims for breach of contract (Claims 1 and 2); breach of good faith and fair dealings (Claims 3 and 4); breach of the Florida Motor Vehicle Dealer Act, Fla. Stat. § 320.64 (Claims 5–9); violation of the Federal Automobile Dealer's Day in Court Act, 15 U.S.C. § 1221 (Claim 10); violation of the Sherman Antitrust Act, 15 U.S.C. § 1 (Claim 11); and for Attorney's Fees under Fla. Stat. § 320.697 (Claim 12). It also alleges additional claims against General Motors for promissory estoppel (Claim 13) and negligent misrepresentation (Claim 14).

General Motors and GMAC have both moved to dismiss all claims against them.[1]

## III. ANALYSIS

### a. Breach of Contract and Good Faith/ Fair Dealing Claims Against GMAC (Claims 1 and 3)

Hopkins argues that GMAC's conduct breached their contract as well as the covenant of good faith and fair dealing. GMAC responds that its conduct was completely within the language of the relevant contracts, which it attached to its motion to dismiss.

A document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is central to the plaintiff's claim and undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir.2002). Here, the attached contracts are central to the plaintiff's claim, as Hopkins is asserting breach of *these particular contracts*, and they are undisputed, as Hopkins does not dispute their authenticity. Accordingly, I will consider them in evaluating GMAC's motion for judgment on the pleadings without any conversion to summary judgment.

 Under the plain and unambiguous of the agreements, GMAC had the option to cancel and demand immediate

---

1. GMAC has moved for judgment on the pleadings under Fed.R.Civ.P. 12(c). Such motions are governed by the same standard as a Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. *316, Inc. v. Maryland Cas. Co.*, 625 F.Supp.2d 1179, 1181 (N.D.Fla.2008) (Smoak, J.).

repayment of its loans at any time for any reason. (*See, e.g.,* Doc. 18–1 at ¶ 9; Doc. 18–2 at ¶ 11; Doc. 18–4). Indeed, all the conduct that Hopkins alleges breaches the contract appears to be explicitly authorized by the plain language of the contract. (*See* Doc. 19–1 at 9–10). Further, Florida law is clear that an action for breach of good faith is unavailable where the conduct is within the express terms of the contract. *See Flagship Nat. Bank v. Gray Distribution Sys., Inc.,* 485 So.2d 1336, 1340 (Fla. 3d DCA 1986) ("The good faith obligation found in section 671.203 may not be imposed to override express terms in the contract."); *Riedel v. NCNB Nat. Bank of Florida, Inc.,* 591 So.2d 1038, 1040 (Fla. 1st DCA 1991) ("[The] duty of good faith may not be imposed to override the express terms of a contract.").

Hopkins, in its response, does not appear to address the merits of GMAC's argument at all, but instead parrots its contention that the contracts should not be considered until an opportunity for discovery. I have already disposed of this argument. The lone case that Hopkins cites in support of its claims surviving dismissal, *Mente Chevrolet Oldsmobile, Inc. v. GMAC,* 451 Fed.Appx. 214 (3d Cir.2011), is inapposite both because it is not binding precedent and because it is factually distinguishable, as it considered an ambiguous contract provision rather than, as here, an unambiguous one.

Because GMAC has advanced a plausible theory for dismissal of Claims 1 and 3, and Hopkins has wholly failed to rebut the arguments, dismissal is appropriate. Hopkins has failed to allege any facts that appear to amount to breach of its contracts with GMAC, nor has it alleged facts showing any breach of good faith or fair dealing outside the explicitly permitted bounds of the agreements. Because it is early in the litigation and the parties have not fully addressed the merits of these claims, the dismissal comes without prejudice.

I note that GMAC also argues that its claims should be dismissed with prejudice because of a settlement agreement it signed with Hopkins regarding similar state court litigation. However, I need not address the settlement agreement—which was signed on July 10, 2009, prior to the first events alleged in the Complaint—as Hopkins has failed to state a claim regardless of whether such a claim has already been released.

### b. Breach of Contract and Good Faith/Fair Dealing Claims Against General Motors (Claims 2 and 4)

General Motors, rather than attaching the contracts itself, simply alleges that the complaint fails to identify the specific provisions which it breached. Hopkins responds that it did so by alleging that General Motors's conduct led to constructive termination of its agreement and the "Dealer Agreement."

General Motors is correct. Hopkins's allegations of breach of contract are not specific enough to put General Motors on notice of the claims against it, and the allegations of "constructive discharge" are mere recitations of the elements and not sufficient to state a claim. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).

While General Motors has not pointed to any binding authority for the proposition that Hopkins must state the specific contractual provisions in order to allege a claim for breach of contract, the law is clear that Hopkins must at least give enough information about the contents of the contract to put General Motors on notice as to how it is in breach of that contract. The Complaint must plead enough factual material to plausibly demonstrate that General Motors failed to per-

form on some obligation it had to Hopkins. That requires, at a minimum, some description of the obligation that General Motors owed under the contract.

Claims 2 and 4 are therefore dismissed without prejudice.

### c. Florida Motor Vehicle Dealer Act Claims (Claims 5–9)

Hopkins next alleges that both General Motors and GMAC violated provisions, the Florida Motor Dealer Vehicle Act ("FMDVA"), Fla. Stat. § 320.64, which prohibits licensees from committing certain acts. Specifically, Hopkins argues they violated the following provisions:

(6) The applicant or licensee has coerced or attempted to coerce any motor vehicle dealer to enter into any agreement with the licensee.

(7) The applicant or licensee has threatened to discontinue, cancel, or not to renew a franchise agreement of a. licensed motor vehicle dealer, where the threatened discontinuation, cancellation, or nonrenewal, if implemented, would be in violation of any of the provisions of § 320.641.

(8) The applicant or licensee discontinued, canceled, or failed to renew, a franchise agreement of a licensed motor vehicle dealer in violation of any of the provisions of § 320.641.

(9) The applicant or licensee has threatened to modify or replace, or has modified or replaced, a franchise agreement with a succeeding franchise agreement which would adversely alter the rights or obligations of a motor vehicle dealer under an existing franchise agreement or which substantially impairs the sales, service obligations, or investment of the motor vehicle dealer.

(15) The applicant or licensee, directly or indirectly, through the actions of any parent of the licensee, subsidiary of the licensee, or common entity causes a termination, cancellation, or nonrenewal of a franchise agreement by a present or previous distributor or importer unless, by the effective date of such action, the applicant or licensee offers the motor vehicle dealer whose franchise agreement is terminated, canceled, or not renewed a franchise agreement containing substantially the same provisions contained in the previous franchise agreement or files an affidavit with the department acknowledging its undertaking to assume and fulfill the rights, duties, and obligations of its predecessor distributor or importer under the terminated, canceled, or nonrenewed franchise agreement and the same is reinstated.

### 1. Against GMAC

■ GMAC argues that the FMDVA claims are inapplicable to it, since it is not a dealer. The Act defines "Franchise Agreement" to mean a contract "between a manufacturer, factory branch, distributor, or importer, and a motor vehicle dealer." Fla. Stat. § 320.60(1). Hopkins responds that because it has alleged that GMAC is General Motors' agent, the act applies to it as well.

I have already noted, however, that it is indisputable that GMAC was not an agent of General Motors, since General Motors lost its controlling interest in GMAC in 2006. It is impossible for GMAC to fall within the provisions of the FMDVA, so the claims against it are dismissed with prejudice.

### 2. Against General Motors

The FMDVA does apply to Hopkins's agreements with General Motors, who is a "manufacturer" under the statute. However, General Motors argues that the allegations in the complaint fail to describe any conduct amounting to a violation of the FMDVA.

## A. Count 5

■ The facts do not appear to allege any instance where General Motors "coerced or attempted to coerce" Hopkins "to enter into any agreement." Fla. Stat. § 320.64(6). The complaint is wholly devoid of any narrative in which General Motors made any attempt to have Hopkins enter any contract. Count 5 is dismissed without prejudice.

## B. Counts 6 and 7

■ Fla. Stat. 320.64(7) and 320.64(8) respectively prohibit the threat of cancelation and actual cancelation of a franchise agreement by the manufacturer that does not comport with Fla. Stat. § 320.641, which requires 90–day advance written notice of any intent not to cancel or fail to renew a franchise agreement.

General Motors argues that the franchise was never terminated, since Hopkins sold it to another dealer. Hopkins responds that its franchise agreement was "constructively discharged," since General Motors's actions forced him into the sale.

Hopkins has not cited, nor does there appear to be, any binding Florida precedent regarding constructive termination of franchise agreements. Hopkins cites only New York cases applying New York law. It appears that only one court, and one without any precedential authority, has assessed the constructive termination of franchise agreements. *See Bert Smith Oldsmobile, Inc. v. Gen. Motors Corp.*, No. 8:04CV2666T–27EAJ, 2005 WL 1210993, at *2 (M.D.Fla. May 20, 2005).

I need not decide, however, whether FMDVA § 320.64 prohibits constructive termination of franchise agreements, because even if such a rule applied, Hopkins has failed to allege constructive termination. Constructive termination "applies where one party unilaterally modifies the terms of a contractual relationship in a manner that substantially interferes with the other party's ability to obtain the benefits of the contract." *Bert Smith Oldsmobile*, 2005 WL 1210993, at *2 (citing *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1183 (2d Cir.1995)). Hopkins has not alleged that General Motors unilaterally modified the terms of its contract, or that it modified any portion of the franchise agreement at all. Hopkins has not alleged that General Motors did anything other than fail to make good on its promise to give Hopkins a Buick franchise, an allegation that has nothing to do with the contract.

Accordingly, Counts 6 and 7 are dismissed without prejudice.

## C. Count 8

■ As in Counts 6 and 7, Hopkins' allegations fail to show that General Motors conduct amounted to "modif[ying] or replac[ing]" the franchise agreement with a "succeeding franchise agreement" in violation of Fla. Stat. § 320.64(9). The complaint does not allege that General Motor's conduct affected the franchise agreement at all. Count 8 is therefore dismissed without prejudice.

## D. Count 9

For the reasons already discussed, the complaint does not allege any conduct that caused a "termination, cancellation, or non-renewal of a franchise agreement," in violation of Fla. Stat. § 320.64(15). Count 9 is dismissed without prejudice.

### d. *Federal Automobile Dealer's Day in Court Act Claims (Claim 10)*

■ Hopkins next alleges that General Motors and GMAC are liable under the Federal Automobile Dealer's Day in Court Act, 15 U.S.C. § 1221 et seq., which provides a cause of action against manufacturers that fail to act in good faith in per-

forming or complying with franchise agreement. 15 U.S.C. § 1222.

As with the FMDVA claims, it is indisputable that GMAC is not an "automobile manufacturer" or "under the control of such manufacturer," 15 U.S.C. § 1221(a), therefore Claim 10 against GMAC is dismissed with prejudice.

 General motors, which is an "automobile manufacturer," argues that the case should be dismissed for failure to comply with the Act's three-year statute of limitations, 15 U.S.C. § 1223. The complaint does not appear to allege any conduct by General Motors occurring after October 7, 2010 (Doc. 1 at 11), which would mean that the statute expired on October 7, 2013. The complaint was not filed until August 6, 2014. Hopkins responds that the claim should survive a motion to dismiss because it is possible that it did not actually discover the basis for the claim until August 2011, and factual determinations are not appropriate at this stage in the litigation. Under Florida law, claims do not accrue until the party's "discovery or duty to discover the act constituting an invasion of his legal rights." *Branford State Bank v. Hackney Tractor Co.,* 455 So.2d 541, 542 (Fla.Dist.Ct.App.1984).

Hopkins' argument is frivolous and no more than a blatant attempt to nudge this litigation into the expensive discovery process. By its own allegations, Hopkins was well aware of the General Motors's conduct—the failure to make good on the promise to give it a Buick franchise—that it claims invaded its legal rights by the time it was "forced," (Doc. 1 at 11), to sell its dealership on October 7, 2010.

Because the statute of limitations expired on October 7, 2013, Claim 10 is dismissed with prejudice as to General Motors. Dismissal based on the statute of limitations is appropriate because it is "apparent from the face of the complaint that

the claim is time-barred," and "it appears beyond a doubt that [Hopkins] can prove no set of facts that toll the statute." *Sec'y of Labor v. Labbe,* 319 Fed.Appx. 761, 764 (11th Cir.2008) (citations and quotations omitted).

### e. Sherman Antitrust Act Claims (Claim 11)

 Hopkins next alleges that General Motors and GMAC conspired to restrain trade in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. Both Defendants argue that Hopkins's Complaint fails to state a claim.

The complaint fails to state a claim for antitrust violations because it fails to define relevant a relevant geographic market or product market in which Defendants' conduct allegedly caused anticompetitive effects. *See Jacobs v. Tempur–Pedic Int'l, Inc.,* 626 F.3d 1327, 1336 (11th Cir.2010). The complaint likewise wholly fails to allege any actual or potential harm to competition, as it fails to point to any specific damage done to consumers in the relevant (yet to be defined) market. *Id.* at 1339.

Claim 11 is dismissed without prejudice as to both defendants.

### f. Attorneys' Fees Claims (Claim 12)

Plaintiff's claim for attorneys' fees is no more than a statement of a right to recover attorneys' fees if successful on FMDVA claims; it does not state any cause of action. Claim 12 is dismissed with prejudice as to both defendants.

### g. Promissory Estoppel Claim Against General Motors (Claim 13)

Hopkins next alleges that General Motors should be liable under a promissory estoppel theory for breaking its promise to provide Hopkins with a Buick franchise, and its promise to pay a substantial portion of the potential sale of Hopkins's GMC franchise to Rahal Buick so that

Hopkins could satisfy its mortgage and retain ownership of its real property. General Motors responds that the claim is barred by the statute of frauds, and in any event, the claim does not satisfy the elements of promissory estoppel.

■■■ Under Florida law, to state a claim for promissory estoppel, a plaintiff must allege that (1) the plaintiff detrimentally relied on a promise made by the defendant; (2) that the defendant reasonably should have expected the promise to induce reliance; and (3) that injustice can be avoided only by enforcement of the promise against the defendant. *W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc.*, 728 So.2d 297, 302 (Fla. 1st DCA 1999). Promissory estoppel cannot be used to circumvent the statute of frauds. *City of Orlando v. W. Orange Country Club, Inc.*, 9 So.3d 1268, 1269 (Fla. 5th DCA 2009).

### 1. The promise to pay a portion of the selling price

■■■ Hopkins's claim fails as to General Motors's promise to pay a portion of the selling price of its GMC franchise. Hopkins has not alleged any facts to show how it detrimentally relied on that promise.

This part of the claim is dismissed without prejudice.

### 2. The promise to provide Hopkins with a Buick franchise

■■■ General Motors's first argument—that the claim is barred by the statute of frauds—fails. Under Florida law, the statute of frauds bars the enforcement of a contract when the parties intended and contemplated that the performance of the agreement would take longer than one year. *Dwight v. Tobin*, 947 F.2d 455, 459 (11th Cir.1991). Here, the complaint alleges a promise that "Hopkins GMC would obtain a Buick franchise."

(Doc. 1 at 26). It makes no difference whether the franchise agreement is a continuing agreement or if the franchise agreement could not be completed within one year. The complaint sufficiently alleges that General Motors made representations that Hopkins would become a party to a Buick franchise agreement, and there is no indication at this stage in the litigation that the parties intended the document to be signed more than a year from when the promise was made.

General Motors's reliance on *Hall v. Burger King Corp.*, 912 F.Supp. 1509 (S.D.Fla.1995), is misplaced. Not only does the decision have no binding authority, it is factually distinguishable. In *Hall*, the alleged promise was for investigation and preparation of sites to be turned into future franchise locations—an ordeal that would take longer than one year, unlike the signing of a franchise agreement.

■■■ General Motors's second argument—that the claim does not meet the elements of promissory estoppel—however, is more compelling. Claims for promissory estoppel must be "definite as to terms and time." *See W.R. Grace & Co. v. Geodata Servs., Inc.*, 547 So.2d 919, 924 (Fla. 1989). The complaint fails to mention any contemplated timeframe regarding the sale of the Buick franchise. And without more factual details regarding the promise that "as part of General Motors' dealer development network planning, Plaintiff would obtain a Buick franchise," Doc. 1 at 4–5, the complaint has not sufficiently alleged that the promise was more than a "a truthful statement as to the present intention of a party with regard to his future act," *W.R. Grace*, 547 So.2d at 924, and thus insufficient to state a claim for promissory estoppel. To properly state a claim for promissory estoppel, the complaint must allege sufficient factual material to "plausibly suggest" that General Motors

made a promise, definite as to terms and time, that Hopkins would obtain a Buick franchise within one year. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007). The Complaint's vague assertions that General Motors "began to represent" that Hopkins would obtain a Buick franchise, (Doc. 1 at 4), do not bring the complaint within the realm of plausibility.

Claim 13 is dismissed without prejudice.

### h. Negligent Misrepresentation Claim Against General Motors (Claim 14)

 Hopkins finally alleges that "General Motors' statements aforesaid," (Doc. 1 at 28), amounted to negligent misrepresentations. This claim fails, however, both because "statements aforesaid" is too vague to put General Motors on notice of the claims against it, and because the complaint has not pled any factual material to plausibly suggest that any of General Motors's statements were false at the time the time they were made. For example, there is nothing in the complaint to suggest that General Motors did not have the presentation intention to grant Hopkins a Buick franchise at the time it made those representations.

Claim 14 is dismissed without prejudice.

## IV. CONCLUSION

After review of Hopkins's Complaint, I find that it has not stated any claim upon which relief can be granted.

The relief requested in Defendant General Motors LLC's Motion to Dismiss Plaintiff's Complaint (Doc. 15) is **GRANTED**. Claims 10 and 12 are **DISMISSED WITH PREJUDICE**. Claims 2, 4, 5, 6, 7, 8, 9, 11, 13, and 14 are **DISMISSED WITHOUT PREJUDICE**.

The relief requested in Defendant Ally Financial, Inc.'s Motion for Judgment on the Pleadings (Doc. 19) is **GRANTED**. Claims 5, 6, 7, 8, 9, 10, and 12 are **DISMISSED WITH PREJUDICE**. Claims 1, 3 and 11 are **DISMISSED WITHOUT PREJUDICE**.

Plaintiff is granted leave to amend its complaint as to those claims dismissed without prejudice not later than **December 4, 2014,** to attempt to correct its deficiencies and allege facts that state a claim upon which relief can be granted.